UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACK HERNANDEZ,<br><br>                Plaintiff,<br><br>vs.<br><br>GLASSVIEW, LLC., and JAMES G. BROOKS, JR,<br><br>                Defendants. | *Civil Action No.* *1:21-cv-741*<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Jack Hernandez, by his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges upon information and belief as follows:

**NATURE OF ACTION**

1. From April 2018 to April of 2020, Plaintiff Jack Hernandez ("Plaintiff") was employed by Defendant Glassview, LLC (the "Glassview" or "Company") and James G. Brooks, Jr. ("Brooks", collectively with the Company, the "Defendants") as a Sales Agent.

2. In violation of federal and state labor laws, Defendants unlawfully required Plaintiff to work in excess of 40 hours per week without paying Plaintiff the minimum wage compensation to which he was entitled in accordance with federal law and Florida law. Plaintiff now brings this action to recover unpaid minimum wages, unpaid commissions, liquidated damages, interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110 *et seq*., and common law breach of contract.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The Court

also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332.

4. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq*.

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391 (c) (1) and (2) and (d).

7. Defendant agreed that any suit arising out of the independent contractor agreement by and between Plaintiff and Defendant "shall be filed only in state or federal court located in the County and State of New York, and each party hereby irrevocably and unconditionally consents and submits to the exclusive jurisdiction of such courts over any suit, action, or proceeding arising out of or related to this Agreement and waives any defense to such jurisdiction and venue."

## **PARTIES**

8. At all relevant times mentioned herein, Plaintiff Jack Hernandez is and was a resident of Loxahatchee, in the County of Palm Beach, in the State of Florida.

9. The Company is incorporated in the State of Delaware and maintains its principal place of business at 1150 Fifth Avenue, Apt. 10D, New York, New York, 10128.

10. At all relevant times herein, the Company met the definition of Plaintiff's "employer" under the Fair Labor Standards Act and the Florida Minimum Wage Act.

11. Upon information and belief, at all relevant times, Defendant Brooks maintained a personal residence in New York City.

12. Defendant Brooks meets the definition of Plaintiff's "employer" under all applicable statute.

13. Defendant Brooks exercised control over significant aspects of the Company's day-to-day functions, including but not limited to determining compensation of employees and hiring and firing employees, and as such is individually liable under the FLSA and Florida law.

14. At all relevant times mentioned herein, the Company employed more than four employees and made in excess of $500,000 in revenue annually.

## FACTUAL ALLEGATIONS

15. Glassview is a digital media marketing company that sells video advertising services to brands.

16. At all times relevant to this action, Defendants were Plaintiff's employer, possessing the power to hire and fire Plaintiff, control the terms and conditions of Plaintiff's employment, and determine the rate and method of Plaintiff's compensation.

**Plaintiff's Interview and Contract with Defendants**

17. On or around April 2018, Plaintiff was interviewed by Nicole Castagna, then-manager of Glassview's Human Resources ("HR") department.

18. During the interview, Ms. Castagna explained to Plaintiff that, if offered the role, he would go through a three-month probationary period before he would become a salaried employee.

19. It was explained that during this probationary period, Plaintiff would only be paid commissions based on his sales but after the probationary period, Plaintiff would become a full-time employee and receive benefits.

20. Shortly after the interview, the Company offered Plaintiff the role of "Sales Agent".

21. Plaintiff then entered into an Independent Contractor Sales Agency Agreement[1] (the "Agreement") with Glassview on April 16, 2018.

22. The Agreement provided that Plaintiff's role as a sales agent would "consist of introductions of, and other sales activities with respect to, Identified Prospects."

23. Exhibit A of the Agreement defined the terms of Plaintiff's compensation. It provided that Plaintiff's "sole compensation for his, her or its services hereunder shall be the [c]ash [c]ompensation and the award of [u]nits as set forth below."

24. Exhibit A further provided that, "[c]ommissions are not due or earned until the date that they are paid to the Agent. At the Company's sole discretion, the Agent may be eligible to receive commissions on gross revenue received after termination of the sales agency agreement provided that the relevant insertion order is fully-executed prior to the termination of the sales agency agreement."

**Plaintiff's Job Title and Responsibilities**

25. Plaintiff's work for the Company was conducted remotely from Plaintiff's home office in Loxahatchee, Florida, with the exception of site visits, which Plaintiff conducted about twice a year.

26. Although the Agreement stated that Plaintiff was an independent contractor, the facts, as set forth herein, clearly establish that Plaintiff was actually an employee.

27. For example, Defendants provided Plaintiff with an official Company email address that identified him as "VP, Sales" that Plaintiff used this email address to communicate with Glassview's clients and leads.

---

[1] As set forth throughout the factual allegations in this Complaint, despite entering into an Independent Contractor Agreement, the Company exercised significant control over how, when, and where work was performed and thus is an employee, not an independent contractor.

28. Moreover, during sales pitches, Plaintiff was identified as "Vice President of Sales" and his photo was included in presentations.

29. Shortly after being hired, Plaintiff also participated in several training sessions at the Company in order to perform his duties in the manor and means required by the Company.

30. For example, Plaintiff was trained on Hubspot, a database where employees were required to add and maintain sales leads.

31. Plaintiff was also given specific instructions on the manner and sequence of tasks he had to follow when engaging new leads and existing clients.

32. These tasks included, but were not limited to: (1) researching the web to identify contact information for potential leads; (2) updating the Company's Hubspot database with new contacts; (3) contacting as many leads within a Company as possible; (4) exchanging emails and phone calls with interested leads to provide more information about the Company's services; (5) setting up conferences to deliver sales pitches to prospective clients (either via web conference or in person); (6) sitting in on and participating in sales pitches; (7) following up with existing clients regularly to ensure their satisfaction with the Company's services; and (8) writing detailed reports after all client visits and sales calls and submitting them to Defendant.

33. Approximately 70% of Plaintiff's total time on the job was dedicated to administrative tasks such as updating the Company database with his contacts, following up on internal business emails from Defendant and its employees, and providing information on new services to existing clients.

34. While he primarily worked in the sales department, a portion of Plaintiff's work was also in the accounts department, which was responsible for managing existing clients.

35. Additionally, as the only sales agent who was fluent in Spanish, Plaintiff was often

asked to translate on calls with South American clients.

36. For example, Plaintiff helped another sales agent pitch services to Anheuser-Busch in Columbia over the course of four to five months.

37. Plaintiff was also asked to translate the Company's sales materials into Spanish on several occasions.

38. Lastly, from April 2018 to around June 2019, Plaintiff was required to attend daily sales calls with other sales agents and employees.

39. Then, in June of 2019, after over a year Plaintiff received an email saying that the Company cannot, by law, require independent contractors to participate in daily calls and therefore he was no longer to participate in the sales calls.

40. However, this was short lived because in or around November 2019, Plaintiff's attendance on daily calls became required again and from that point, until the end of his employment, he regularly participated in the daily sales calls.

**Despite Working 20-30 Hours Per Week Over the Course of Two Years and Engaging Several Prospective Clients, Plaintiff is Only Paid Commission for One Deal**

41. When Plaintiff commenced his duties as a sales agent on or around April of 2018, he immediately began identifying and contacting leads, and he regularly worked between 20 and 30 hours per week.

42. Plaintiff closed his first deal roughly six months into his employment at the Company.

43. Plaintiff had exchanged approximately thirty emails with the client, Vitacost, which culminated in a pitch call with Plaintiff, the CEO of Glassview, Defendant Brooks, and the Account Planner of Glassview, Morgan Fosina.

44. The sale was finalized in July of 2018; however, Plaintiff was not paid until

November 2018.

45.     When he was paid, Plaintiff only received two payments totaling $33,700.81 even though the sale amount was for $150,000 – which meant Plaintiff's commission should have been $45,000.[2]

46.     The only other compensation Plaintiff received for the duration of his employment was twenty dollars ($20.00), which the Company paid to Plaintiff because he wrote a five-star review of the Company on Glassdoor.com.

47.     For the 2018 tax year, Defendant Glassview issued an IRS Form 1099-MISC for Plaintiff's commission payment.

48.     After closing the deal with Vitacost, Plaintiff continued to work 20-30 hours per week, maintain communications with prospective clients, and meet with prospective clients in person and over web conferences.

49.     Despite these efforts, Plaintiff did not close on any other deals for Glassview.

50.     However, during this time, Plaintiff began to notice a pattern where other sales agents would interfere with leads Plaintiff had identified, acquired, and inputed on Hubspot.

51.     For example, Plaintiff added Caterpillar Inc. to Hubspot, but he was excluded on sales calls with the Company and he did not receive compensation for identifying and acquiring this client when they signed a contract with the Company.

52.     In addition to this incident, Plaintiff also noticed that another sales agent was contacting Brandstar, another client Plaintiff had acquired.

53.     Thus, despite being the first point-of-contact for these clients, Plaintiff was edged

---

[2]     The sale amount for this contract was actually $150,000 and according to the Agreement, Plaintiff was owed 30%, or $45,000. However, Plaintiff was only paid approximately $32,000 because the client pulled their ads out of the service and was not happy with Glassview's service on the ads, which was not part of Plaintiff's job.

7

out of their deals and did not receive any commission for his work in identifying these clients; instead the lead and future deal was stolen from him.

54. In or around November of 2019, Plaintiff met with Sales Director James Elliott in Miami, Florida.

55. At this meeting, Mr. Elliott praised Plaintiff's performance and said that Plaintiff had pulled in "big names."

56. Mr. Elliott offered Plaintiff a new contract that largely mirrored the original contract, the only material difference between the two was that the new contract raised his rate of commission on the second year that a client was retained.

57. At this meeting, Plaintiff asked why he had not become a full-time employee even after his probationary period ended and why the Company had not compensated him for leads he acquired that other agents later contacted.

58. Mr. Elliott responded by stating that the Company offered a high-rate commission at 30% and that "nobody makes that money, not even drug dealers."

59. This response was highly offensive considering that the Company had not even paid Plaintiff the minimum wage for his hours worked.

60. Plaintiff incurred travel expenses for this trip to Miami as well as for site visits with prospective clients.

61. In total, he incurred roughly $788 in hotel and transportation costs over the course of his employment with Glassview.

62. Moreover, Plaintiff accumulated expenses due to working from home. In total, he incurred up to $7,200 in expenses over his two years of employment with the Company.

**Plaintiff's Resignation**

63. Having his clients stolen from him by other agents in the Company, combined with the fact that he was not making minimum wage, led Plaintiff to resign from the Company via email on or around April 10, 2020.

64. After emailing Mr. Brooks to notify him of his resignation, Plaintiff asked Mr. Brooks to reimburse Plaintiff's business travel expenses.

65. Plaintiff made this request directly to Mr. Brooks because as CEO he had final authority on compensation issues, including but not limited to business travel reimbursement for employees.

66. Mr. Brooks did not respond to Plaintiffs emails.

67. Plaintiff then sent another email asking for a copy of his second contract, which Mr. Brooks promptly provided via email.

68. Subsequently, Plaintiff sent an email to several directors at the Company detailing his concerns regarding his pay, lack of reimbursement, and how other sales agents in the Company were taking clients, who he had identified and acquired, from him.

69. Plaintiff received no response to this email.

70. Over the course of his employment with the Company, Plaintiff acquired over 1,100 leads and added them to the Company's Hubspot database.

71. However, to date, Plaintiff's total compensation for his two years of employment with Defendant consists of $33,700.81, paid in two installments in November 2018, and a $20 bill.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Failure to Pay Minimum Wages in Violation of the Fair Labor Standards Act)**
*As to All Defendants*

72. Plaintiff repeats and realleges each and every paragraph above as though fully set

forth herein.

73. Defendant Glassview constitutes an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(r). The gross annual income for the enterprise exceeds $500,000.

74. Defendant Brooks exercised control over the nature and structure of the employment relationship and economic control over the relationship such that he is an "employer" under the FLSA and FMWA and are therefore individually subject to liability.

75. Defendant Brooks is an officer or supervisor at Glassview who is personally liable for unpaid wages under the FLSA because he exercised control over significant aspects of the Company's day-to-day functions, including compensation of employees, and hiring and firing of employees.

76. At all relevant times herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, et seq.

77. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, per 29 U.S.C. §§ 206(a); 29 U.S.C. § 207(a)(1).

78. Defendants are subject to the minimum wage requirements of the FLSA because they acted as an enterprise engaged in interstate commerce and its employees are engaged in commerce.

79. Defendants, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay Plaintiff minimum wage.

80. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from minimum wage obligations. None of the FSA exemptions applied to Plaintiff.

81. Defendants acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff, in addition to payment of back minimum wages, is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages described pursuant to Section 16 of the FLSA, codified at 29 U.S.C.2 § 216(b). Alternatively, should the court find Defendants did not act willfully in failing to pay minimum wage, Plaintiff is are entitled to an award of prejudgment interest at the applicable legal rate.

82. Furthermore, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiff, Defendants have failed to make, keep, and preserve records with respect to Plaintiff sufficient to determine his wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, *et seq.*

83. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), and such other legal and equitable relief as the Court deems just and proper.

84. Plaintiff seeks recovery of his attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
**(Failure to Pay Lawful Minimum Wages in Violation of the Florida Minimum Wage Act)**
*As to All Defendants*

85. Plaintiff repeats and realleges each and every paragraph above as though fully set forth herein.

86. At all relevant times, Plaintiff was an employee and Corporate Defendant has been an employer within the meaning of the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110 et seq.

87. Defendant Brooks exercised control over the nature and structure of the employment relationship and economic control over the relationship such that he is an "employer" under the FLSA and FMWA and are therefore individually subject to liability.

88. Defendant Brooks is an officer or supervisor at Glassview who is personally liable for unpaid wages under the FMWA because he exercised control over significant aspects of the company's day-to-day functions, including compensation of employees, and hiring and firing of employees.

89. The minimum wage provisions of the Florida Minimum Wage Act and its supporting regulations apply to Defendants.

90. Defendants have failed to pay Plaintiffs the minimum wages to which he was entitled under the Florida Minimum Wage Act.

91. By Defendants' failure to pay Plaintiff minimum wages, they have willfully violated the Florida Minimum Wage Act.

92. Due to Defendants' violations of the Florida Minimum Wage Act, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, and reasonable attorneys' fees and costs of the action.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of Contract)**
*As to Defendant Glassview*

93. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

94. Plaintiff and Defendant entered into a valid and binding agreement memorialized in Plaintiff's Independent Contractor Agreement.

95. Plaintiff's original Agreement, which was signed by Plaintiff and Defendant's Director of People and Engagement, Kathleen Diskin, stated that his commission for the first year

of that contract (which was signed on 4/1/6/2018) was equal 30% of the Company's Gross Revenue from sales of the Company's services to prospects identified by Plaintiff.

96. Plaintiff's updated Agreement, which was signed by Plaintiff and Defendant's CMO, Patrick Kirby, stated that his commission for the first year of that contract (which was signed on 12/1/2019) was equal 30% of the Company's Gross Revenue from sales of the Company's services to prospects identified by Plaintiff.

97. Plaintiff has performed all of his obligations under the Agreements.

98. Defendant has materially breached the Agreement by failing to pay Plaintiff 30% commission on all sales resulting prospects which he identified by submitting the names to the Company in writing, via Hotspot, designating them as his "accounts."

99. As a result of Defendant's numerous material breaches of the Agreement with respect to the 30% commission, Plaintiff has been damaged, which damages are the natural and proximate consequence of Defendant's breach of the Agreement, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and issue:

(i) An award to Plaintiff for his actual damages in an amount to be determined at trial for lost wages and benefits, including an award of back pay and front pay;

(ii) An award for contract damages arising out of material breaches of his Agreement, including payment of all unpaid commissions guaranteed by his Agreement;

(iii) An award to Plaintiff of compensatory damages in an amount to be determined at trial for the humiliation, mental anguish, pain and suffering and emotional distress sustained by him as a result of the Company's failure to pay him a minimum wage;

(iv) An award of punitive damages to deter future conduct by the Defendant, in an amount to be determined at trial as a result of the Company's failure to pay Plaintiff a minimum wage;

(v) An award to Plaintiff of the costs of this action, including reasonable attorneys' fees to the fullest extent permitted by law; and

(vi) Such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: January 27, 2021                                          Respectfully submitted,
New York, New York

_____/s/_____
Christopher Q. Davis
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004
646-430-7930 (main)
646-349-2504 (fax)